**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Allstate Indemnity Company,<br><br>               Plaintiff,<br><br>v.<br><br>Broan-NuTone LLC, et al.,<br><br>               Defendants. | No. CV-23-01847-PHX-SMM<br><br>**ORDER** |

      Before the Court are two Motions to Dismiss for Lack of Personal Jurisdiction, one filed by Defendant Uchihashiu Estec Company Limited ("UEC") (Doc. 47), and one filed by Defendant Tamura Corporation ("Tamura"). (Doc. 52). For the following reasons, the Court grants both Motions to Dismiss, and orders the dismissal of Defendant UEC and Defendant Tamura from this action, without prejudice.

**I.    BACKGROUND**

      The case arises from a fire that damaged a home owned by Jaime Canning in Surprise, Arizona on November 29, 2022. Canning was insured by Plaintiff, Allstate Indemnity Company, who paid a claim of $248,073.63 for the losses allegedly caused by the fire. Plaintiff, in subrogation, asserts a claim for product liability, alleging that a fan created by Defendant Broan-NuTone, or the component parts to the fan, were defective and unreasonably dangerous, causing the subject fire. (Doc. 1) at Exhibit 3. The action was originally filed in the Maricopa County Superior Court and was removed to this Court on September 1, 2023.

On April 18, 2024, Plaintiff filed an Amended Complaint, which added Defendant Tamura, Defendant UEC, and Defendant Jakel Motors to the action. (Doc. 33). The Amended Complaint states that an examination of the fan revealed a defective thermal cutoff switch ("TCO") as well as a defectively manufactured motor. Id. at 4. Plaintiff alleges Defendant UEC and Defendant Tamura "designed, manufactured, and distributed, among other things, the ["TCO"] for the [f]an at issue." Further, the Amended Complaint alleges that UEC "purchased all liabilities of [Defendant] Tamura and/or its predecessors in relation to the TCO." Id. at 2.

On August 30, 2024, Defendant UEC filed a Motion to Dismiss for Lack of Personal Jurisdiction. (Doc. 47). Similarly, on September 17, 2024, Defendant Tamura filed a Motion to Dismiss for Lack of Personal Jurisdiction. (Doc. 52). The Motions are fully briefed.

## II.     LEGAL STANDARDS

### A. Rule 12(b)(2)

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss for lack of personal jurisdiction. Facing a Rule 12(b)(2) motion to dismiss, the nonmovant bears the burden of demonstrating that the court's exercise of jurisdiction is proper. See CollegeSource, Inc. v. AcademyOne, Inc., 653 F.3d 1066, 1073 (9th Cir. 2011). The plaintiff "need only make a prima facie showing of jurisdictional facts" when the court's determination is based on written materials rather than an evidentiary hearing. Boschetto v. Hansing, 539 F.3d 1011, 1015 (9th Cir. 2008) (quotation marks and citation omitted). That is, "the plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant." Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995).

Uncontroverted allegations in the complaint must be taken as true. Boschetto, 539 F.3d at 1015. In addition, "[t]he court may consider evidence presented in affidavits to assist it in its determination and may order discovery on the jurisdictional issues." Doe v. Unocal Corp., 248 F.3d 915, 922 (9th Cir. 2001). Any conflict "between the parties over statements contained in affidavits must be resolved in the plaintiff's favor." Boschetto, 539

F.3d at 1015 (quoting Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004)).

**B. Personal Jurisdiction**

Federal courts generally follow state law in determining the bounds of personal jurisdiction. See Fed. R. Civ. P. 4(k)(1)(A). Here, "Arizona 'exerts personal jurisdiction over a nonresident litigant to the maximum extent allowed by the federal constitution.'" LNS Enters. LLC v. Cont'l Motors, Inc., 22 F.4th 852, 858 (9th Cir. 2022) (quoting A. Uberti & C. v. Leonardo, 892 P.2d 1354, 1358 (Ariz. 1995)); see also Ariz. R. Civ. P. 4.2(a). Given that, "the jurisdictional analyses under state law and federal due process are the same." Schwarzenegger, 374 F.3d at 801.

Under the Fourteenth Amendment's due process clause, "a tribunal's authority depends on the defendant having such 'contacts' with the forum State that 'the maintenance of the suit' is 'reasonable, in the context of our federal system of government,' and 'does not offend traditional notions of fair play and substantial justice.'" Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct., 141 S. Ct. 1017, 1024 (2021) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316–17 (1945)). This inquiry "has long focused on the nature and extent of 'the defendant's relationship to the forum state.'" Id. (quoting Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cnty., 582 U.S. 255, 262 (2017)). That relationship may permit "two kinds of personal jurisdiction: general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction." Id.

General jurisdiction depends on the defendant's relationship with the forum state—for companies, the question is whether the defendant is incorporated, headquartered, or otherwise "at home" there. Ford, 141 S. Ct. at 1024.

By contrast, "specific jurisdiction covers defendants that are less intimately connected with a state, but that have sufficient minimum contacts with the state that are relevant to the lawsuit." LNS Enters., 22 F.4th at 859 (citing Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1155 (9th Cir. 2006)). While general jurisdiction depends on the relationship between the defendant and the forum, specific jurisdiction depends on the

relationship between "the defendant, the forum, and the litigation." Walden v. Fiore, 571 U.S. 277, 284 (2014) (citation omitted). The Ninth Circuit has "established a three-prong test for analyzing a claim of specific personal jurisdiction." Schwarzenegger, 374 F.3d at 802. In particular:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

Id. (citing Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir.1987).

### III.    DEFENDANT UEC's MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

The Court finds that it does not have personal jurisdiction over Defendant UEC in this action. As an initial matter, the Court finds that general jurisdiction is not present for Defendant UEC. General jurisdiction depends on the defendant's relationship with the forum state, and for companies, the question is whether the defendant is incorporated, headquartered, or otherwise "at home" there. Gamez v. Huffy Corp. Inc., No. CV-21-00414-TUC-JCH, 2024 WL 98423, at *2 (D. Ariz. 2024) (citing Ford, 592 U.S. at 358). UEC is a foreign corporation, organized and existing under the laws of Japan with its principal place of business located in Osaka, Japan. (See Doc. 47) exhibit A at ¶¶ 5-6. UEC is not licensed, authorized, or registered to do business in Arizona, nor is it incorporated in Arizona. Further, UEC has no bank accounts, business locations, offices in the state. Id. at ¶¶ 8-13. Therefore, UEC is not considered "at-home" in Arizona, and this Court cannot exercise general jurisdiction over the company.

The Court additionally finds that it cannot exercise specific jurisdiction over

Defendant UEC. Notably, Defendant UEC does not have the "sufficient minimum contacts" with the forum to exercise the exercise over jurisdiction. LNS Enters., 22 F.4th at 859 (citing Pebble Beach Co., 453 F.3d at 1155). Based on the affidavits provided in the briefing for this motion, the only connections that Defendant UEC had with the forum state was a component that they may have manufactured ending up in the fan at issue and an entirely separate series of transactions with a single entity in the state, from 2017 to 2024, to sell solder. Defendant UEC's sale of solder is both unrelated to the manufacturing of the TCOs that may have been used in the fans and a miniscule portion of its global sales. (Doc. 47) exhibit A at ¶ 27.

Plaintiff urges the Court to find jurisdiction on the basis of Defendant UEC's intent to distribute their product across the United States, with the foresight that the product would end up in the forum state. (Doc. 51). Putting aside Defendant UEC's contentions regarding the specifics of the distribution process, the Court does not find Plaintiff's argument persuasive.

The Ninth Circuit has adopted the "stream of commerce plus" test articulated in Justice O'Connor's Asahi concurrence. Holland Am. Line Inc. v. Wartsila N. Am., Inc., 485 F.3d 450, 459 (9th Cir. 2007). There, Justice O'Connor wrote:

> The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State. Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State .... But a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.

Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 112 (1987). "Something more," may be "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." See LNS Enters., 22 F.4th at 861 (quoting Asahi, 480 U.S. at 112).

The Ninth Circuit also draws from a Supreme Court decision which sought to clarify

Asahi and which "revers[ed] [a] ... New Jersey[ ] decision that 'concluded that a British manufacturer of scrap metal machines was subject to jurisdiction in New Jersey, even though at no time had [the manufacturer] advertised in, sent goods to, or in any relevant sense targeted [New Jersey].'" LNS Enters., 22 F.4th at 862 (quoting J. McIntyre Ltd. v. Nicastro, 564 U.S. 873, 877 (2011)); see also, e.g., Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1228 (9th Cir. 2011) ("We believe that the Supreme Court's recent decision in J. McIntyre ... is consistent with the line of [Ninth Circuit] cases finding specific jurisdiction when there has been purposeful direction."); Ariz. Sch. Risk Retention Tr., Inc. v. NMTC, Inc., 169 F. Supp. 3d 931, 939 (D. Ariz. 2016) ("[T]he Court, as many other courts have done, views the holding of the fragmented J. McIntyre decision to be that of the narrow ground set forth in Justice Breyer's concurrence in the judgment. ... [V]iewed from Justice Breyer's p[er]spective, ... a stream of commerce approach ... that imposes personal jurisdiction on no more than the defendant's use of a national distributor ... must be rejected.") (citations omitted).

Looking to these precedents, the Court determines that Defendant UEC did not "purposefully direct [its] activities or consummate some transaction with [Arizona,] or perform some act by which [Defendant UEC] purposefully avail[ed] [itself] of the privilege of conducting activities in [Arizona.]" See Schwarzenegger, 374 F.3d at 802. There is no

In cases like this, involving products liability and negligence, the Ninth Circuit often analyzes "purposeful direction" rather than "purposeful availment." Id. (distinguishing the two as "distinct concepts," where "purposeful availment" is analyzed most often in contract disputes, such as where a defendant executed or performed a contract in the forum State). But the distinction is not "a hard-and-fast rule." Davis v. Cranfield Aerospace Sols., Ltd., 71 F.4th 1154, 1162 (9th Cir. 2023). The first prong of the Schwarzenegger test "may be satisfied by purposeful availment, by purposeful direction, or by some combination thereof." Id. (citing Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d, 1199 1206 (9th Cir. 2006)) (internal quotation marks omitted). The result here is the same either way. Davis v. Cranfield Aerospace Sols., Ltd., 71 F.4th 1154,1162 (9th Cir.

2023), cert. denied, 144 S. Ct. 826 (2024) (analyzing both).

Purposeful direction is established where the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." Schwarzenegger, 374 F.3d at 803 (citing Calder v. Jones, 465 U.S. 783 (1984)).

Here, purposeful direction cannot be found, as Defendant UEC made no intentional act that was expressly aimed at the forum state. Defendant UEC has no agreement with any distributer to serve as an Arizona sales agent. (Doc 47) exhibit A at ¶ 33. Defendant UEC has no input into decisions regarding importation, distribution, and sales of UEC products imported and sold by the co-Defendants. Defendant UEC has never directed Defendant Broan or Defendant Jakel to sell any of its products in Arizona. Additionally, Defendant UEC was not informed as to where its products would be distributed. Id. at ¶¶ 34-40. In fact, Defendant UEC states that they have no direct transactions between themselves and the fan manufacturer, Defendant Broan, nor any direct transactions with motor manufacturer, Defendant Jakel. (Doc. 54) exhibit A at ¶¶ 8, 9. This means that if Defendant UEC's TCO was incorporated into the fan at issue in this case, it would have been indirectly, through a non-party trading company. Id. at ¶¶ 10-12. Clearly, Plaintiff can point to no intentional act made by Defendant UEC that was directed towards the forum state.

The result is the same under a purposeful availment test. A defendant purposefully avails itself of the forum's benefits if it has intentionally "engaged in significant activities within a State or has created 'continuing obligations' between [itself] and the residents of the forum." Gray & Co. v. Firstenberg Mach. Co., Inc., 913 F.2d 758, 760 (9th Cir. 1990) (citation omitted) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985)). The defendant "must show that the defendant deliberately 'reached out beyond' its home— by, for example, 'exploi[ting] a market' in the forum State or entering a contractual relationship centered there." Ford, 141 S. Ct. at 1025 (citing Walden, 571 U.S. at 285).

Again, there is no evidence that Defendant UEC purposefully availed itself of the forum state. As stated above, Defendant UEC's direct activities in the State of Arizona

were limited to the sale of an unrelated product, solder. Availing oneself of the benefits of the forum state in a transaction unrelated to the one upon which suit is brought is not sufficient basis for a court to find personal jurisdiction. Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 931 n. 6 (2011) ("[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales"). Defendant UEC undertook no activities that can be said to have created "continuing obligations" between itself and Arizona that are connected to the injury that occurred. Therefore, Plaintiff has not satisfied a showing of purposeful availment.

Plaintiff's argument relies on the alleged fact that Defendant UEC, either directly or indirectly through imputation of Defendant Tamura's liabilities, knew that Defendant Broan would distribute its fan, with Defendant UEC's TCO, across the United States. Even taking these facts as true, Plaintiff ignores case law that states "[a]s a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State." J. McIntyre, 564 U.S. at 882. Plaintiff's arguments have been rejected by this Court. See Gamez, No. CV-21-00414-TUC-JCH, 2024 WL 98423.

Further, Plaintiff's argument that Defendant Tamura's obligations may be imputed onto Defendant UEC for the purposes of personal jurisdiction are unconvincing. The Court does not need to discuss whether such obligations are imputed, as the Court does not find that it has jurisdiction over Defendant Tamura, as discussed below.

Therefore, the Court finds that it does not have personal jurisdiction over Defendant UEC. The Court orders that Defendant UEC be dismissed from this action.

**IV.     DEFENDANT TAMURA's MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

The Court likewise finds that it does not have personal jurisdiction over Defendant Tamura in this action. As an initial matter, the Court finds that general jurisdiction is not present for Defendant Tamura. As with Defendant UEC, Defendant Tamura is a Japanese Corporation, with its principal place of business in Tokyo. (Doc. 52). General jurisdiction in Arizona cannot be exercised as Defendant is not incorporated in the state, headquartered

in the state, or otherwise "at home" in the state. Gamez, No. CV-21-00414-TUC-JCH, 2024 WL 98423, at *2 (citing Ford, 592 U.S. at 358).

Neither can the Court exercise specific jurisdiction over Defendant Tamura in relation to this claim. Plaintiff makes similar arguments as it made regarding Defendant UEC, namely that Defendant Tamura entered its product into the country, knowing that it may end up in Arizona.

The Court does not find that Defendant Tamura has such minimum contacts as to justify this Court's exercise of personal jurisdiction. LNS Enters., 22 F.4th at 859 (citing Pebble Beach Co., 453 F.3d at 1155). Notably, Defendant Tamura has even less connection to the forum state than Defendant UEC has. While Defendant UEC's contacts of such insignificance as to deny the Court's ability to exercise personal jurisdiction, Defendant Tamura's connections, past a component it may have manufactured ending up in the forum state, are non-existent. Defendant Tamura does not market, solicit, advertise, or otherwise influence any Arizona residents to purchase any of its products. (Doc. 52) Exhibit A at ¶¶ 10, 12. Nor does Defendant Tamura directly sell its products in Arizona. Defendant Tamura does not even contact Arizona consumers. Id. at ¶¶ 11-12. It only exports its products to a select number of U.S. entities not located in Arizona. Id. at 12. Defendant Tamura does not have any subsidiaries in Arizona, nor is it registered with the Arizona Corporation Commission to do business in Arizona. Id. at ¶¶ 6, 7.

Therefore, it cannot be said that Defendant Tamura either purposefully availed or purposefully directed its activities towards to forum state, nor can it be said that Defendant Tamura purposefully availed itself of benefits of the forum state. Defendant had no intentional connection with Arizona, whatsoever. Haller v. Advanced Indus. Comput., Inc., No. CV-13-02398-PHX-DGC, 2015 WL 854954, at *6 (D. Ariz. 2015) (finding no specific jurisdiction in Arizona over manufacturer who shipped its products to a California distributor to distribute the product to Arizona customers because "there [was] no evidence that [the manufacturer] targeted Arizona by marketing its products to Arizona customers or shipping its products directly to Arizona."). If Defendant Tamura's product ended up in

the forum state, it did so without any purposeful direction by Defendant Tamura. (Doc. 52) Exhibit A at ¶ 5. Further, Defendant Tamura has not availed itself of the benefits of the forum state, never seeking enforcement of any rights in Arizona courts. Id. at ¶¶ 10-12. This, in combination with the lack of contacts all together in the forum state, bars the Court from exercising jurisdiction.

Again, Plaintiff relies on a theory of personal jurisdiction that is not supported by case law. Just because a harm occurred in Arizona that may have been connected to a part manufactured by Defendant Tamura, this Court cannot exercise jurisdiction over the party. See, e.g. Munderloh v. Biegler GmbH, No. CV-21-08004- PCT-GMS, 2022 WL 1719685 (D. Ariz. 2022) ("To the extent [the defendant] argues that the but-for test should be measured in relation to its wrongful conduct as opposed to its forum contacts, this argument is likewise incorrect. Courts in the Ninth Circuit routinely characterize the but-for test as one between the defendants' 'forum-related activities' and the plaintiff's claims."). There is not the "something more" required by Asahi to allow this Court to exercise personal jurisdiction under a theory of a stream of commerce. See Asahi, 480 U.S. at 112. ("Something more," may be "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State."). Therefore, the Court will grant Defendant Tamura's Motion to Dismiss and dismiss Defendant Tamura from this action.

## V.     ADDITIONAL DISCOVERY

Plaintiff requests additional jurisdictional discovery. A court may permit jurisdictional discovery "where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." Data Disc, Inc. v. Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1285 n.1 (9th Cir. 1977). A court may grant jurisdictional discovery if the request is based on more than a "hunch that it might yield jurisdictionally relevant facts." See Boschetto, 539 F.3d at 1020. But the Court need not permit even limited discovery where the claim of jurisdiction "appears to be both

attenuated and based on bare allegations in the face of specific denials[.]" Pebble Beach, 453 F.3d at 1160 (citation omitted). It is not an abuse of discretion to deny jurisdictional discovery "when it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction." Wells Fargo & Co. v. Wells Fargo Exp. Co., 556 F.2d 406, 430 n.24 (9th Cir. 1977).

Here, where it is evident that there are no facts that will allow this Court to exercise jurisdiction over Defendant UEC or Defendant Tamura, the Court will use its discretion to deny Plaintiff's request for additional jurisdictional discovery. Plaintiff points towards no potential additional facts that could prove its theory of jurisdiction.

Accordingly,

**IT IS ORDERED granting** Defendant UEC Motion to Dismiss. (Doc. 47).

**IT IS FURTHER ORDERED granting** Defendant Tamura's Motion to Dismiss. (Doc. 52)

**IT IS FURTHER ORDERED dismissing** Defendant UEC and Defendant Tamura from this action, without prejudice.

**IT IS FURTHER ORDERED directing** the Clerk of the Court to terminate this action as to Defendant UEC and Defendant Tamura.

Dated this 23rd day of January, 2025.

Stephen M. McNamee
Senior United States District Judge